UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

MAY 29 2012

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

CATHY M. SPRIGGS,

      Plaintiff,

v.

      Case No.: 2:11cv182

SENIOR SERVICES OF
SOUTHEASTERN VIRGINIA et al.,

      Defendant.

### OPINION AND ORDER

Defendant Senior Services of Southeastern Virginia ("SSSVA") has moved for summary judgment against Plaintiff Cathy M. Spriggs ("Ms. Spriggs"). On March 28, 2011, Ms. Spriggs filed a pro se Complaint against SSSVA, her employer, and John Skirven ("Mr. Skirven"), CEO of SSSVA. ECF No. 1. In response to SSSVA's Motion to Dismiss, the Court granted Ms. Spriggs leave to amend her complaint on July 6, 2011. ECF No. 11. On August 3, 2011, Ms. Spriggs timely filed an Amended Complaint alleging claims of race-based discrimination and retaliation under Title VII of the Civil Rights Act of 1964 against both SSSVA and Mr. Skirven. ECF No. 13. On October 6, 2011, the Court granted Mr. Skirven's Motion to Dismiss for Lack of Jurisdiction, leaving SSSVA as the only defendant in the action. ECF No. 24. On February 15, 2012, SSSVA filed a Motion for Summary Judgment and accompanying memorandum and exhibits. ECF

Nos. 29-30.  Ms. Spriggs filed an Opposition Memorandum on March 6, 2012, and SSSVA filed a Rebuttal Brief on March 8, 2012.[1]  The Court held a hearing on SSSVA's Motion for Summary Judgment on March 26, 2012, at 11:00 a.m.  Kelvin Newsome, Esq., represented SSSVA and Ms. Spriggs appeared pro se. Gloria Smith was the official court reporter.  Based on the parties' written submissions, oral arguments, and reasons contained herein, the Court FINDS that SSSVA is entitled to summary judgment.

## I.  SUMMARY OF FACTS

Ms. Spriggs is an African American woman who has been employed at SSSVA since 1986. Def.'s Supp. Mem. ¶ 6.  SSSVA is a not-for-profit corporation that develops and operates programs to assist persons over the age of sixty. It provides a range of services, including low-cost transportation, meal delivery, in-home-care, and housekeeping to seniors throughout Virginia's Tidewater Region. Id. ¶¶ 1-3. Ms. Spriggs began her career at SSSVA as an "aging social worker" and was promoted to Director of Long Term Care in 1989.  Id. ¶ 7.  Prior to its abolition in 2008, the Long Term Care Department ("LTC Department" or "the Department") supervised and coordinated many of SSSVA's services. Id. ¶ 8.  As Director of the Department, Ms. Spriggs's

---

[1] On March 14, 2012, the Court issued a Rule 56 Order directing Ms. Spriggs to file exhibits in support of her Opposition Memorandum by March 23, 2012, and allowing SSSVA to respond to her submissions on or before April 2, 2012. ECF No. 37. Ms. Spriggs and SSSVA both complied with the Order.

primary responsibility was to "provide leadership and direction to department staff" and her secondary responsibility was to be "aware and sensitive to the work related needs and stresses of staff" and to "proactively implement guidance and training strategies to assure optimum production performance and assure smooth and positive work flow."[2] Def.'s Supp. Mem. Ex. 5 at 2.

On September 4, 2007, Mr. Skirven, Ms. Spriggs's direct supervisor, performed Ms. Spriggs's annual evaluation and placed her on performance-based probation through January 31, 2008.[3] Id. ¶ 46, Ex. 11 at 9. On November 7, 2007, while she was still on probation, Mr. Skirven notified Ms. Spriggs that he intended to remove her from her position as Director of the LTC Department when her probation period ended. On November 27, 2007, prior to the completion of Ms. Spriggs's probation, Mr. Skirven reassigned Ms. Spriggs to the position of "Program Developer" effective December 3, 2007. Cathy Spriggs Dep. at 52; Am. Mem. in Opp. Ex. J. As Program Developer, Ms. Spriggs's responsibilities changed, but she retained her salary, benefits, and managerial status. Spriggs Dep. at 63, 69.

---

[2] At the time relevant to this dispute, the Department had 29 employees. Id. ¶ 9.
[3] The performance evaluation that SSSVA has submitted lists the end date of Ms. Spriggs's probation as January 4, 2008, but Mr. Skirven apparently extended the date to January 31, 2008. Def.'s Supp. Mem. Ex. 11 at 10.

SSSVA apparently abolished the position of Director of Long Term Care after it removed Ms. Spriggs from the position. Roughly nine months after Ms. Spriggs's reassignment, SSSVA hired Mary Levy for the position of Director of the Center for Aging, which, Ms. Spriggs contends, is essentially the same position as Director of Long Term Care with fewer responsibilities and a higher salary by $15,000.[4]  Ms. Levy is white.

Ms. Spriggs filed a charge of discrimination based on race and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC") on December 27, 2007. Def.'s Supp. Mem. Ex. 22. On June 4, 2010, the EEOC issued a determination letter stating that it found reasonable cause to believe that Ms. Spriggs had been retaliated against and proposing a conciliation plan. Id. Ex. 23. Conciliation efforts failed, and on December 28, 2010, the EEOC issued Ms. Spriggs a notice of right to sue. Id. Ex. 24. Ms. Spriggs timely commenced this action on March 28, 2011.

### A.   Ms. Spriggs's 2007 Probation and Reassignment

Prior to the September 2007 probation period, Ms. Spriggs was placed on performance-based probation in 1993 and 2003. Def.'s Exs. 5-6. In 2005 and 2006, she received positive

---

[4] Ms. Spriggs has not provided any evidence of Ms. Levy's salary and there is no job description for the Director of the Center for Aging in the record.

evaluations and salary increases. Id. Exs. 7-8. Mr. Skirven became Ms. Spriggs's direct supervisor in October 2005, subsequent to approving her 2005 evaluation and pay raise. John K. Skirven Decl. ¶ 12.

In the months leading up to Ms. Spriggs's 2007 probation, SSSVA was conducting departmental evaluations to determine how it could better function as an organization. Skirven Decl. ¶ 20. Ms. Levy was the program evaluator responsible for performing departmental evaluations. Id. ¶ 21. Prior to evaluating the LTC Deparment, Ms. Levy evaluated SSSVA's Transportation Department and Nutrition Department. Based on problems and inefficiencies that Ms. Levy identified in her departmental reports, Mr. Skirven consolidated the departments into the "Transit and Wellness Department." Id. ¶ 24. Mr. Skirven reassigned the director of the Transportation Department, a white male, to the position of Program Developer. Id. ¶ 22-23.  Mr. Skirven reassigned the director of the Nutrition Department, a black female, to the position of Wellness Supervisor. Id. ¶ 24.

Ms. Levy began evaluating the LTC Department in June 2007 after Mr. Skirven noticed that service referrals for the Department had increased but actual services rendered had decreased. Skirven Decl. ¶ 25; Def.'s Supp. Mem. Ex. 10 at 3. Ms. Levy identified problems with communication and procedures

within the LTC Department.    She summarized her findings as
follows:

> 1. Number of customers receiving services are 20% less
>    than this time last year with little or no change in
>    care coordinator staffing.
> 2. There is minimal, if any, trust in management.
> 3. Work performance for long term staff is very
>    cumbersome, time consuming and not people focused,
>    therefore, taking away time and services for the
>    customer.
> 4. Misuse of time management of staff and provision of
>    agency services by unmonitored agencies increases
>    the risk of financial disaster for the agency.

Def.'s Supp. Mem. Ex. 10 at 6. At the time of Ms. Levy's
assessment, Ms. Spriggs was aware of the LTC Department's
decreased productivity and had placed the Department's assistant
director on probation as a consequence. Spriggs Dep. at 38. The
assistant director, in turn, placed several other departmental
employees on probation. Id. at 43. Ms. Spriggs was also aware
that employees in the department suffered from low morale. Id.
at 42.

    After receiving Ms. Levy's assessment of the LTC
Department, Mr. Skirven conducted Ms. Spriggs's annual
performance review. Pursuant to SSSVA's policies, "two or more
ratings of Needs Improvement and/or Unacceptable will
automatically place an employee on probation . . . ." Def.'s
Supp. Mem. Ex. 11 at 2.  Mr. Skirven gave Ms. Spriggs a rating
of "needs improvement" in eighteen of forty-nine categories. Id.
at 3-11. Mr. Skirven met with Ms. Spriggs to review her

-6-

evaluation and Ms. Leavy's assessment of the LTC Department on September 4, 2007. Skirven Decl. ¶ 27. At that time, Mr. Skirven reviewed his concerns about Ms. Spriggs's leadership of the Department and placed her on probation. Id. ¶ 28.

As a condition of Ms. Spriggs's probation, Mr. Skirven directed her to complete a performance improvement plan. Spriggs Dep. at 44-46. Mr. Skirven sent Ms. Spriggs a template for an improvement plan on October 22, 2007. Def. Supp. Mem. Ex. 13; Skirven Decl. ¶ 30; Spriggs Dep. at 46. The parties disagree about when Ms. Spriggs was to complete the plan, though Ms. Spriggs admits that Mr. Skirven repeatedly informed her that her drafts were tardy and inadequate. Id. at 44-45. Between November 2, 2007, and November 16, 2007, Mr. Skirven and Ms. Spriggs communicated multiple times in person and over email concerning Ms. Spriggs's obligation to develop an improvement plan. Several meetings were scheduled and rescheduled to resolve mutual concerns about the plan.

On November 7, 2007, Mr. Skirven met with Ms. Spriggs and told her that he was removing her as Director of LTC when her probationary period ended. Skirven Decl. ¶ 33; Spriggs Dep. 75. Upon receiving this news, Ms. Spriggs questioned Mr. Skirven about the logic of producing a performance plan if she was no longer going to serve as Director of LTC. Spriggs Dep. 75. On November 9, 2007, Mr. Skirven informed Ms. Spriggs via email

-7-

that the most recent draft of the plan was unsatisfactory and told her that she needed to send him a complete plan by November 13, 2007. Def. Supp. Mem. Ex. 18, at 2. In the same email he stressed that she needed to work harder if she wanted to successfully complete probation. Id. Ms. Spriggs missed the November 13 deadline, and on November 16, 2007, she still had not delivered a plan to Mr. Skirven. Id. Ex. 20.

On November 16, 2007, Ms. Spriggs's attorney notified SSSVA by letter that Ms. Spriggs believed she had been the victim of race-based discrimination. Id. Ex. 21, at 4. On November 27, 2007, Mr. Skirven met with Ms. Spriggs and informed her that she would begin her duties as Program Developer on December 3, 2007. Spriggs Dep. at 51-52. She was not permitted to complete her probation as Director of LTC.

## B. Ms. Spriggs's Performance as Program Developer

Ms. Spriggs has been serving as Program Developer at SSSVA since her reassignment to that position in December 2007. When she started the new position, she was placed on a six-month period of probation and successfully completed it in June 2009. Spriggs Dep. 83-84. She claims, however, that subsequent to her reassignment she was required to move offices and provided no assistance in doing so. Pl.'s Compl. 5, ECF No. 13. She also claims that she received little to no guidance from SSSVA on how to perform her new job even after requesting assistance and

-8-

supervision. Id. 4-5; Spriggs Dep. 82-83. She apparently did not receive a job description for the position until shortly before her probation period ended. Id. 5. Nevertheless, Mr. Skirven continues to supervise Ms. Spriggs, and she has received positive evaluations in her new position. Id. 67-69. Although Ms. Spriggs became aware that SSSVA was hiring a Director for the Center for Aging, she states that Mr. Skirven told her not to apply for the position. Spriggs Dep. at 64. SSSVA hired Ms. Levy for the position in June 2008. Pl.'s Compl. 6.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." Id.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden "may be discharged by 'showing'—that is,

pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325. If the movant makes such a showing, the nonmoving party is required "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (quotations omitted).   Although the Court must view the record as a whole and in the light most favorable to the nonmovant, see Terry's Floor Fashions, Inc., 763 F.2d 604, 610 (4th Cir. 1985), the nonmovant "cannot defeat summary judgment with merely a scintilla of evidence," Am. Arms Int'l. v. Herbert, 563 F.3d 78, 82 (4th Cir. 2009).   Moreover, if "the evidence is so one-sided that one party must prevail as a matter of law," the Court must grant summary judgment. O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 545 (4th Cir. 1995) (quoting Anderson, 477 U.S. at 251-52).

### III. **ANALYSIS**

#### A.   **Ms. Spriggs's Disparate Treatment Claim**

Ms. Spriggs claims that she was discriminated against on the basis of her race in violation of Title VII. See 42 U.S.C. § 2000e-2(a). Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

-10-

because of such individual's race . . . ." 42 U.S.C.
§ 2000e-2(a). Where a plaintiff lacks direct evidence of
discriminatory animus, courts allow the plaintiff to establish a
Title VII violation with circumstantial evidence through the
McDonnell Douglas burden-shifting framework. Diamond v. Colonial
Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005) (citing
McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973)). Under
this framework, the plaintiff carries the burden of establishing
a prima facie case of discrimination.  If she succeeds, the
defendant must produce a legitimate, non-discriminatory reason
for the adverse treatment.  If the defendant does so, the burden
shifts back to the plaintiff to show that the defendant's
proffered reason is mere pretext for discrimination. See id. at
318. "The ultimate question in every employment discrimination
case involving a claim of disparate treatment is whether the
plaintiff was the victim of intentional discrimination," Reeves
v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000),
and the burden shifting framework "is merely a sensible, orderly
way to evaluate the evidence in light of common experience as it
bears on the critical question of discrimination," Furnco
Constr. Corp. v. Waters, 438 U.S. 567, 577 (U.S. 1978). At all
times, the burden of proving intentional discrimination by a
preponderance of the evidence rests with the plaintiff. Texas
Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

The prima facie case merely serves to eliminate the most common non-discriminatory reasons for adverse treatment and thereby raises the inference that the treatment was, more likely than not, the product of unlawful discrimination. See id. at 253-54.

To establish a prima facie case of disparate treatment under Title VII, a plaintiff must show that "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004).

SSSVA argues that Ms. Spriggs cannot establish a prima facie case for discrimination because none of the conduct of which she complains amounts to an adverse employment action, and even if her reassignment constitutes an adverse employment action, she was not performing her job duties at a level that met SSSVA's legitimate expectations when it reassigned her to Program Developer. Def.'s Supp. Mem. at 17. Although the record contains sufficient evidence to support a finding that Ms. Spriggs suffered an adverse employment action, her disparate treatment claim fails because nothing in the record suggests

that she was satisfactorily performing the responsibilities of LTC Director at the time of the adverse action.

### 1. Adverse Employment Action

An employee asserting a disparate treatment claim must show that the treatment of which she complains affected the terms and conditions of her employment. See 42 U.S.C. § 2000e-2(a); Boone v. Goldin, 178 F.3d 235, 255 (4th Cir. 1999). Such actions are typically limited to "demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." Id. Ms. Spriggs alleges that she suffered adverse employment actions when SSSVA (1) performed her September 2007 performance evaluation, (2) placed her on probation as LTC Director, (3) reassigned her to the position of Program Developer, and (4) terminated her probation early. The record supports the conclusion that all but the early termination of Ms. Spriggs's probation constituted adverse employment actions.

The Fourth Circuit recognizes that job reassignments can constitute actionable adverse employment actions under Title VII, see James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 376-77 (4th Cir. 2004), but only where they result in a "decrease in compensation, job title, level of responsibilities, or opportunity for promotion . . . ." Boone, 178 F.3d at 256. Although Ms. Spriggs retained her pay, benefits, and managerial

-13-

status when SSSVA reassigned her to the position of Program Developer, she lost her job title and supervisory responsibilities. The title "Director" typically denotes significant supervisory responsibilities, and the record discloses that as Director of the LTC Department, Ms. Spriggs managed and supervised numerous employees. Upon reassignment, Ms. Spriggs not only lost this title, but construing the record in the light most favorable to her, it is reasonable to infer that she also lost her supervisory responsibilities. Indeed, SSSVA conceded as much at hearing.

Defendant cites James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371 (4th Cir. 2004), in support of its position that Ms. Spriggs's reassignment did not constitute an adverse employment action. In James, the Fourth Circuit concluded that an employee who had been transferred from the position of Project Manager to Director of Projects on a discrete contract did not suffer an adverse employment action because he continued to enjoy the same pay, benefits, and other terms and conditions of employment. James, 368 F.3d at 376-77. The court found the fact that the plaintiff retained his position as Senior Associate within the company significant. Id. at 376. Ms. Spriggs's situation is distinguishable from that in James because her position vis-à-vis her employer, rather than her position vis-à-vis a discrete project, detrimentally changed. Accordingly, the Court

-14-

finds that the record contains evidence sufficient for a fact finder to reasonably conclude that Ms. Spriggs's reassignment to Program Developer and the concomitant loss of supervisory responsibility constituted an adverse employment action under Title VII.

Ms. Spriggs's September 2007 performance evaluation and probation also constituted adverse employment actions. A poor performance evaluation may qualify as an adverse employment action "where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.'" James, 368 F.3d at 377. Moreover, where an employee's failure to meet the performance objectives of probation establishes grounds for dismissal, placing an employee on probation may also be an adverse employment action. See Rachel-Smith v. FTData, Inc., 247 F. Supp. 2d 734, 746 (D. Md. 2003) ("To the extent that Plaintiff's performance was to be reviewed on a weekly basis while she was placed on probation and lack of performance or meeting objectives during this period [would] be considered grounds for dismissal, Plaintiff's placement on probation may be considered an employment action that adversely affected the conditions of Plaintiff's employment.") (internal quotations omitted). The terms of Ms. Spriggs's probation involved development of a performance improvement plan, bi-weekly performance assessments, and

transfer or termination if she failed to successfully complete probation. Pl.'s Am. Supp. Mem. Ex. D. Ms. Spriggs's 2007 performance evaluation prompted her probation, and Mr. Skirven relied on the evaluation and Ms. Spriggs's conduct during probation to remove her from her position as LTC Director. Accordingly, there is sufficient evidence to conclude that Ms. Spriggs's 2007 performance evaluation and probation constituted adverse employment actions. See Nye v. Roberts, 145 F. App'x 1, 5 (4th Cir. 2005) (holding that letter of reprimand and performance evaluation that thrust plaintiff down disciplinary track and closer to termination constituted adverse employment actions).

The Court cannot find, however, that the early termination of Ms. Spriggs's probation constituted an adverse employment action. Mr. Skirven informed Ms. Spriggs on November 7, 2007, that her term as LTC Director would terminate upon completion of her probationary period. Mr. Skirven then informed Ms. Spriggs on November 27, 2007, that she was to begin as Program Developer on December 3, 2007. Other than accelerating the date on which Ms. Spriggs was to commence her new duties, the early termination of her probationary period exacted no harm independent of the reassignment itself. It did not precipitate her reassignment, and nothing in the record suggests that Ms. Spriggs could have saved her position as LTC Director if she had

-16-

been allowed to complete her probation.   Accordingly, the Court cannot conclude that terminating Ms. Spriggs's probation a month early amounted to an adverse employment action under Title VII.

Nonetheless, the evidence is sufficient to demonstrate that Ms. Spriggs's 2007 performance evaluation, probation, and reassignment constituted adverse employment actions. She has therefore established the second element of a prima facie case of a Title VII disparate treatment claim. She has, however, failed to demonstrate that she was meeting her employer's legitimate expectations when these actions occurred.

### 2. Employer's Legitimate Expectations

Ms. Spriggs concedes that she was not meeting the objectives of her position when Mr. Skirven placed her on probation after her 2007 performance evaluation. She admits that morale in the LTC Department was low and that her staff was not meeting established service-delivery benchmarks. Moreover, the evidence reveals that she failed to satisfactorily comply with the terms of her probation, namely the timely development of a performance improvement plan.[5] It is axiomatic that employers

---

[5] Although Ms. Spriggs contends that she was not given sufficient guidance on the parameters of her Performance Improvement Plan, courts look to the perception of the decision maker rather than the employee to determine whether the employee was meeting performance goals. See Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980). Nothing in the record suggests that Mr. Skirven's expectations regarding Ms. Spriggs's timely completion of a performance improvement plan were unreasonable.

legitimately expect their employees to perform their job responsibilities in a satisfactory manner and to comply with remedial efforts designed to bring unsatisfactory performance up to par. See Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996). At the time of her 2007 performance evaluation, probation, and reassignment, Ms. Spriggs was simply not meeting these expectations. Accordingly, she cannot establish the elements of a prima facie case of discrimination, and her claim for race-based disparate treatment fails as a matter of law.

### B. Ms. Spriggs's Retaliation Claim

Ms. Spriggs argues that SSSVA retaliated against her after her attorney sent a letter informing SSSVA of her claims against it on November 16, 2009. She claims that SSSVA retaliated against her by: (1) terminating her probation early; (2) requiring her to move offices upon her reassignment and refusing to provide moving assistance; (3) failing to provide guidance in her new position, including denial or a job description, denial of weekly and bi-weekly meetings to assess her progress, and denial of a three month performance review; and (4) placing her on probation in her new position without allowing her to complete the probationary period for her former position.

Title VII's anti-retaliation provision makes it unlawful "to discriminate against any employee . . . because he has

-18-

opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Courts also apply the McDonnell Douglas burden shifting framework to retaliation claims where the plaintiff lacks direct evidence of retaliation. "To establish a prima facie retaliation claim under Title VII, a plaintiff must prove that (1) she engaged in a protected activity, (2) the employer acted adversely against her, and (3) there was a causal connection between the protected activity and the asserted adverse action." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011). SSSVA concedes that the November 16, 2009 letter from Ms. Spriggs's attorney constituted protected activity. It argues, however, that she cannot establish a prima facie case of discrimination because Mr. Skirven informed Ms. Spriggs of his intent to reassign her before she engaged in any protected activity, and none of the treatment of which she complains subsequent to the protected activity amounts to an adverse action.[6] The Court agrees.

---

[6] The treatment of which Ms. Spriggs complains that occurred before November 16, 2007 has no causal connection to the protected activity and, therefore, is not considered as part of Ms. Spriggs's retaliation claim.

-19-

For adverse treatment to be actionable under Title VII's anti-retaliation provision, it need not affect the terms and conditions of the plaintiff's employment. Burlington N. & Santa Fe Rwy. Co. v. White, 548 U.S. 53, 64 (2006). Rather, an action constitutes unlawful retaliation if it is "materially adverse." Id. at 67. Title VII's anti-retaliation provision is meant to promote unfettered access to the Act's remedial mechanisms when an employee reasonably believes that she has been the victim of prohibited discrimination. See id at 68. But it does not shield the employee from petty slights, minor annoyances, snubbing by supervisors, and simple lack of good manners in the workplace. See id. In determining whether an action is materially adverse, the central question is whether it would have deterred a reasonable person in the plaintiff's position, considering all the circumstances, from making or pursuing a discrimination charge. Burlington 548 U.S. at 71.

The record fails to support the conclusion that a reasonable worker in Ms. Spriggs's position would have found her treatment subsequent to the protected activity materially adverse. On November 7, 2007, Mr. Skirven informed Ms. Spriggs that her position as LTC Director would terminate upon completion of her probationary period in January 2008. At that time, Ms. Spriggs's reassignment was essentially a fait accompli. The record discloses that Ms. Spriggs understood this

-20-

fact to the extent that she questioned her continuing obligation to complete a performance improvement plan for the LTC Director position when Mr. Skirven informed her of the decision.   Because Ms. Spriggs's reassignment was a foregone conclusion on November 7, 2009, the fact that Mr. Skirven decided to fast-track her reassignment eleven days after receiving the letter from Ms. Spriggs's attorney does not amount to a materially adverse action.

The same holds true for the probationary period that SSSVA required Ms. Spriggs to complete in her new position. Nothing in the record indicates that the probation was anything other than a formality attendant to the commencement of her new job.   In fact, the evidence suggests that during the second probation period Ms. Spriggs received little scrutiny and was afforded considerable flexibility in performing her duties.   This is in contrast to the intense scrutiny and penalties that accompanied her probation as LTC Director.   In the absence of any evidence demonstrating that the terms of Ms. Spriggs's second probation adversely impacted her performance or future professional prospects,[7] a fact finder cannot reasonably conclude that it was

---

[7] The Court notes that Ms. Spriggs has performed successfully in the position of Program Developer from the time of her reassignment.

-21-

a materially adverse action.[8] See Burlington 548 U.S. at 68, 71 (whether an action is materially adverse must be determined by examining all the circumstances); Parsons v. Wynne, 221 F. App'x 197 (4th Cir. 2007) (holding that negative performance evaluation alone would not dissuade a reasonable worker from pursuing a retaliation claim); Maron v. Va. Polytechnic Inst. & State Univ., Civil Action No. 7:08-cv-005792011 WL 2580639, at *5 (W.D. Va. June 29, 2011) (granting defendant's motion for judgment as a matter of law after jury awarded plaintiff damages on a retaliation claim because extension of performance benchmarks did not amount to an adverse action); Rachel-Smith, 247 F. Supp. 2d at 746 (examining the terms of the plaintiff's probation to determine whether it constituted an adverse action).

The remaining actions of which Ms. Spriggs complains fall into the category of workplace annoyances, inconveniences, and snubs. An employer's failure to provide an employee with moving assistance would hardly dissuade a reasonable worker in Ms. Spriggs's position from making or pursuing a discrimination charge. Cf. McNeill v. Bd. Of Governors of the Univ. of N.C., --- F. Supp. 2d ---, 2011 WL 4104642, at *6 (M.D.N.C.

[8] This is not to say that extending an employee's probationary period could never amount to prohibited retaliatory conduct. Rather, there is simply nothing in the record from which the fact finder can infer that the second probation consisted of the same or similar adverse terms as the first.

-22-

Sept. 14, 2011) (holding that employer's failure to approve travel requests and failure to assign plaintiff a new laptop, printer, and car did not amount to materially adverse actions). Similarly, although Ms. Spriggs may have felt unsupported and out-of-her element in her new position, she has failed to demonstrate that she or her work suffered in any way as a consequence of this desired feedback and supervision.[9] See Burlington, 548 U.S. at 67 ("The anti-retaliation provision protects an individual not from all retaliation, but from retaliation the produces injury or harm"). Although constructive feedback and guidance on one's performance may be desirable, Ms. Spriggs has not cited, and the Court is not aware, of any authority suggesting that an employer's failure to effectively communicate with an employee and provide regular performance evaluations might discourage a reasonable employee from engaging in protected activity. Cf. Burlington, 548 at 68 (explaining that a supervisor's refusal to invite an employee to lunch is trivial unless the lunch contributes significantly to the employees professional advancement); Johnson v. Weld Cnty., 594 F.3d 1202, 1210 (10th Cir. 2010) (finding no adverse action where supervisor began avoiding employee and appeared too busy to answer her questions after she complained of discrimination);

---

[9] The Court notes that Ms. Spriggs has not submitted any evidence suggesting that she was entitled to these privileges.

_Thorn v. Sebelius_, 766 F. Supp. 2d 585, 603 (D. Md. 2011) (supervisor's failure to include plaintiff on a design team did not amount to adverse action). Because a fact finder cannot reasonably conclude that Ms. Spriggs suffered a materially adverse action after she engaged in protected activity based on the evidence in the record, she has failed to establish a prima facie case of retaliation under Title VII. Accordingly, SSSVA is entitled to summary judgment on that claim.

## IV.   CONCLUSION

Ms. Spriggs has failed to present a prima facie case of disparate treatment or retaliation under Title VII. She has forecast evidence that her negative evaluation, placement on probation, and subsequent reassignment were adverse employment actions under Title VII's anti-discrimination provision. However, she has failed to show that she was meeting her employer's legitimate expectations at the time of these actions. She has also failed to present sufficient evidence that the treatment she experienced after SSSVA received the letter from her attorney amounted to materially adverse actions that would have dissuaded a reasonable employee in her position from making or pursuing a discrimination charge. In sum, Ms. Spriggs has failed to raise a genuine dispute of material fact on the issue of whether she was the victim of intentional discrimination or retaliation. Accordingly, SSSVA's Motion for Summary Judgment,

-24-

ECF No. 29, is GRANTED and Ms. Sprigg's claims are dismissed with prejudice.

This Opinion and Order shall constitute the final judgment of the Court in this matter, and the Clerk is DIRECTED to close the case. The Clerk is further DIRECTED to mail a copy of this Opinion and Order to Ms. Spriggs and counsel for SSSVA.

Ms. Spriggs may appeal from the judgment entered pursuant to this final order by filing a written notice of appeal with the Clerk of this Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510, within thirty (30) days from the date of entry of such judgment.

IT IS SO ORDERED.

UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
May 29, 2012

-25-